WILLIS A. CARR, Town Treasurer, *vs.* SAMUEL KETTELLE, Col-
lector of Taxes, *et als.*

MARCH 4, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Financial Meeting. Elections.*
A town meeting held for the imposition of a tax or for the expenditure of
money is not an election.

(2) *Canvassing Voting-Lists for Financial Meeting.*
While the necessity of a properly canvassed voting-list is as great for a financial
town meeting as for an elective meeting, except in those cases where the
legislature has specifically so provided, there is no provision in the statutes
for the canvassing of the voting-lists prior to a financial town meeting or the
voting upon any proposition submitted to the people.

(3) *Same.*
A tax levied and ordered to be assessed by a financial town meeting is not
invalidated because there had been no canvass of the voting-lists prior to
the meeting, where there has been no special legislation requiring such can-
vass.

(4) *Pleading. Insufficiency of Plea.*
Plaintiff moved that defendant be required to specify certain facts, alleged in
a plea, more fully, which motion was granted and a time fixed for defendant
to further plead and plaintiff reply. The plea was not amended, and plain-
tiff had the case set down for trial. The trial court held that this was a waiver
of the objection to the plea as framed, and it not being replied to, its traversa-
ble allegations were to be taken as admitted:—

*Held*, error; the ruling of the court being in substance that the plea was too indefinite to require the plaintiff to reply, it should have been considered as constituting no defence.

DEBT ON BOND. Heard on exceptions of plaintiff, and sustained.

BLODGETT, J. The plaintiff, as town treasurer of West Greenwich, has brought this action of debt upon the bond, given in the year 1904, by the defendant and his sureties as collector of taxes of said town. Upon trial to the Superior Court without a jury, decision was rendered for the defendants; and the plaintiff has brought the case here upon his bill of exceptions, of which we find it necessary to consider but two.

The defendants by their fifth plea averred the invalidity of the tax assessed on June 30, 1904, because the financial town meeting "at which said tax was levied and ordered to be assessed was not a legal meeting because there had been no legal canvass of the voting-list of said town prior to said alleged meeting as required by law." At the trial it affirmatively appeared on the record that the special financial town meeting held on said June 30, 1904, was called by the town council at its session held on June 22, 1904, and less than ten days prior thereto. The trial justice held with the defendants on this plea in his decision, stating "There was no proof of any legal canvass of the voting-list, and I therefore find that said levy and assessment are invalid because it does not appear that there had been a legal canvass of the voting-list as required to give validity to such town meeting."

The plaintiff contends upon his brief, as follows: "The law does not require that there shall be any canvass of the voting-list before the holding of a financial town meeting. That it was competent for the legislature to make such provision and that it may be most desirable, is not the question before the court. Unless such requirement is directed by specific act of the legislature, it cannot be insisted upon," and relies upon § 10 of cap. 8, Gen. Laws of 1896 (now § 10 of cap. 8, Gen. Laws, 1909), and § 7, cap. 808, Pub. Laws, passed January 23, 1901 (now § 5 of cap. 8, Gen. Laws, 1909), which are

respectively as follows: "The board of canvassers shall also hold a last meeting not more than seven nor less than three days preceding the day of voting at any election, when they shall complete the lists of all persons qualified to vote, and notice of the time and place of such meeting shall be given, for at least ten days previous thereto, by posting up notices thereof in three or more public places in every town, and one in each ward and voting-district in each city, and one in each voting-district in any town divided into districts for the purpose of voting, and one in the town or city clerk's office, and by publication in one or more newspapers published in such town or city, if any there be."

"The board of canvassers shall hold their last meeting not more than seven nor less than three days preceding the Tuesday next after the first Monday in November in each year to further correct and add to the voting-lists for such towns or wards, and shall also meet not more than seven nor less than three days prior to any other general or special election to further correct and add to such voting-lists. City and town clerks, immediately upon issuing notices for any called town, ward, or district meeting, or for any special election shall notify the board of canvassers thereof."

(1) It will be observed that the language of these sections refers to general and special "elections" only, and it is obvious that a town meeting held for the imposition of a tax or for the expenditure of money is not an election. Section 1 of article II of the constitution, in defining the qualifications of a real estate voter, makes this distinction apparent in providing that such a voter shall "have a right to vote in the election of all civil officers and on all questions in all legal town or ward meetings so long as he continues so qualified," and the same distinction is observed in section 1 of article VII of amendments. Moreover, the right to vote in the election of all civil officers elected by the people is extended to registry voters as well as property voters by said article VII of amendments, and the impropriety of applying the term to a meeting wherein only the taxpaying electors can participate is obvious. See *In Re the Canvassers' Powers*, 17 R. I. 809.

At the time of the adoption of the present constitution in 1843, and for many years thereafter, it was apparently the universal custom to hold the general town meeting for the election of town officers and the financial town meeting on the same day, and the canvass for the former meeting was thus all that was required. That the voting-lists were to be then canvassed only for elective town meetings is evident from the wording of the statute (Revision of 1844, p. 488): "Said board of canvassers shall also, at least two days previous to any election of representatives to congress, or of electors of president and vice-president of the United States, and to the election of any state, town or city officers, hold a session for the purpose of further correcting the town and ward lists of voters." But with the great growth of the population of the State and the corresponding increase in the amount of the appropriations necessary for the expenses of the town, as well as the greater number of appropriations required therefor and the increasing difficulty of having a larger electorate balloting for officers while the taxpayers were debating the town appropriations at the same time and place, the inevitable difficulty of determining who were entitled to vote in a given case on a *viva voce* vote or on a show of hands, and for other weighty and proper reasons, the former practice was abandoned, and at the present time, as appears by the State Manual of 1909, there are but three towns in the State whose financial and general town meetings are held on the same day. The General Assembly has accordingly passed many special acts for certain towns, providing for the holding of a financial town meeting on another day than that on which the town meeting for the election of officers is held. Apparently noticing that the general laws of the State provided only for the holding of a canvass meeting prior to an election, instead of extending the general law to cover all financial town meetings, the legislature has used these words, or words of similar import, in each of the following cases, viz.: "Said financial town meeting shall be warned and called and the lists of electors qualified to vote therein shall be made out and canvassed in the same manner as provided by law with respect to elective town meetings." South Kingstown, cap.

483, Jan. Session, 1885; North Kingstown, cap. 1438, Jan., 1895; cap. 734, Jan. Session, 1900; Hopkinton, cap. 709, Jan. Session, 1888; cap. 885, Jan. Session, 1890; Charlestown, cap. 1437, Jan. Session, 1895; cap. 733, Jan. Session, 1900; cap. 1024, Jan. Session, 1902; Richmond, cap. 394, Jan. Session, 1896; Warwick, cap. 1035, Jan. Session, 1902; cap. 504, Jan. Session, 1909. And this legislative construction of the provisions of the general laws of the State in this respect is of great weight.

That it was not the intent of the legislature to change the general provisions of the law to cover other than elections is evident from the insertion of the words quoted above in substance in § 5 of cap. 411 of the Pub. Laws, passed May 4, 1909; § 4 of cap. 412, Pub. Laws, passed the same day, and § 4 of cap. 413, Pub. Laws, also passed the same day, by which the three amendments to the constitution adopted at the State election held on November 3, 1909, were submitted to the people. And this has evidently seemed necessary to the General Assembly when submitting constitutional amendments to the people on a day other than the day on which an election is held. Thus, cap. 698, Pub. Laws, passed June 1, 1899, provided for the submission of a constitutional amendment on June 20, 1899, and section 5 of the act of submission contains this special provision for a canvass meeting therefor.

(2)    It is evident that the necessity of a properly canvassed voting-list is as great for a financial town meeting as for an elective town meeting, but it is equally evident that the legislature has not hitherto made such a provision. The object of such an act is, of course, that it may be known who are entitled to participate therein, and that those who vote illegally may be punished. But upon referring to the provisions of the statute concerning fraudulent voting, § 2 of cap. 20, Gen. Laws, 1909, does not in its terms extend to financial town meetings, since it is found that it refers only to "every person who in any *election* shall fraudulently vote," etc., although providing therein, as a part of the punishment for fraudulently voting at any election, that "no person after conviction of such offence shall be permitted to vote in any election or upon any proposition pending before the people."

The same omission and the same extension of punishment is found in the provisions concerning bribery of voters, § 3, cap. 20, Gen. Laws, 1909, as follows: "Every person who shall directly or indirectly give, or offer, or agree to give to any elector or to any person for the benefit of any elector, any sum of money or other valuable consideration for the purpose of inducing such elector to give in or withhold his vote at any *election* in this state, or by way of reward for having voted or withheld his vote, or who shall use any threat or employ any means of intimidation for the purpose of influencing such elector to vote or withhold his vote for or against any candidate or candidates or proposition pending at such *election*, shall be punished by a fine of not less than five hundred dollars nor more than one thousand dollars, or by imprisonment of not less than six months nor more than two years, or by both such fine and imprisonment in the discretion of the court, and no person after conviction of such offence shall be permitted to vote in any election or upon any proposition pending before the people, or to hold any public office; and no evidence given by any witness testifying upon the trial of any charge of bribery shall be used against the person giving such evidence."

In view of these significant statutory provisions and omissions we are compelled, against our first impression, to hold that, except in those instances where the General Assembly has specifically so provided, there is no provision for the canvassing of the voting-lists prior to a financial town meeting or the voting upon any proposition submitted to the people. It is our duty to declare the law as it stands; the constitution has devolved upon the General Assembly the prerogative of enacting the laws.

(3)    In seeking to determine whether the case of the town of West Greenwich is governed by the general law in this respect, or by special legislation covering that town, we have been unable to find any special act referring to West Greenwich, and that town is therefore governed by the provisions of the general law of the State above referred to; and inasmuch as there was no provision of law requiring the holding of a canvass meeting on

June 25, 1904, the ruling of the trial judge was in this respect erroneous.

(4)    A further exception remains to be considered.   In his decision the trial justice says:  "As to plea 4, on March 18, 1908, the plaintiff moved that the defendants be required to specify more fully and to particularize wherein said assessors in the assessment of said tax were not duly qualified to act.   This motion was granted and the defendants were allowed until April 20, 1908, to further plead and the plaintiff seven days thereafter to reply.   The defendants did not thereafter amend said fourth plea, and the plaintiff, without asking the court to take further action relative to said plea by moving to strike it out, had the case set down for trial on his motion filed October 22, 1908, and the case was heard, as before stated, November 11, 1908."   . . .

"4.   By having the case set down for trial, without either insisting upon the amendment of the fourth plea in accordance with the court's decision on his motion or asking to have said plea stricken out because not amended in accordance with such decision, I think it is to be fairly and properly inferred that the plaintiff waived his objection to the plea as framed. The plea at the trial was certainly in the case, and there was no replication filed.   Under rules of pleading, the traversable allegation of the plea that the persons acting as assessors in the assessment of said tax were not duly qualified so to act, is to be taken as admitted and confessed."

We think this ruling was erroneous.   The original ruling of the court was in substance that the fourth plea as it then stood was so indefinite as to be insufficient to require the plaintiff to reply to it or to permit the defendants to offer evidence under it, and should have been considered as constituting no defence. Since a new trial must be ordered, this question of pleading can be settled in the Superior Court if the defence is still relied on.

The exceptions specified are sustained, and the cause is remitted to the Superior Court for a new trial.

*Samuel W. K. Allen*, for plaintiff.

*Quinn & Kernan*, for defendants.